May it please the court. My name is Doug Cloud. I represent Tracy Jonassen. Jonassen. Yes. Mr. Jonassen started work at Port of Seattle in 2004. In 2005, he testified on behalf of Omayo Mukubu in a racial discrimination issue with the port, which resulted in Mr. Mukubu taking Tom Benami's job. Mr. Benami was the husband of John Christensen's secretary. John Christensen was and throughout this period of time is the aviation director for Port of Seattle, one of the most senior managers at the port. Everything started from there, but it got worse when Mr. Jonassen, pursuant to the port's strong policy, reported fraud, improper government activity, and various other misdeeds that he was required to do, pursuant to the port policies. These policies come, essentially are a creature of state law, which under RCW 4241 requires local governments to either adhere to that statute or to get an exemption by adapting their own policies. 4241, however, expresses a strong public policy to protect whistleblowers. And, in fact, the port had to adopt these policies. Sir, are you just washing your hands of the False Claims Act issue? No, they're very much related. However – But that's not quite – let's hear that again. They're not related or you're not – No, no, no, but they're very much related. And let me explain why. The judge, the district judge, Judge Jones, the Honorable Judge Jones, had said in his ruling that there was notice under the False Claims Act claim at some point. He said December 2009 or January 2010. Of course, we believe the evidence would sustain a finding of earlier notice. Specifically, the most compelling date would be April 25, 2008, although we believe prior to that, that's when Mr. Jones went to Cynthia Alvarez, as she's commanded to under the policies, to report the malfeasance of the port. So after whatever notice was, whenever the fact finder decides notice occurred on False Claims Act claim, he did file a claim, they know about it, they knew about it, they found out about it. Then that is when the damages start to accrue. I thought everything he claimed happened to have happened before that. Pardon me? I thought everything he claimed happened to have happened before that. No, the distinction is this. We believe these whistleblower policies are valid and they have to be enforced, and they have not been enforced. And the fair to enforce these policies after notice of the False Claims Act claim is, in fact, retaliatory action. Because, in fact, they do enforce these policies. We know that. Cynthia Alvarez. You're still back to the policy. See, what I asked you, just for clarification of what we have to decide, you made in your briefs a lot of claims directly under the False Claims Act retaliatory provisions. Right. I don't think they're all that strong, and I understand you to be basically walking away from them. Is that right? No, it isn't. And I point to the case of Mindy and Ola. Mindy and Ola cited in our brief, the individual involved in that case had one meeting with the chief executive where she reported to that chief executive that she was investigating possible civil and criminal violations. That's all she said. We feel that the notice that we are claiming is much greater than the plaintiff in Mindy and Ola ever did. And so we feel that notice actually did occur. And we specifically, again, emphasize the April 25, 2008 date when he said fraud. I'm investigating fraud. However, Your Honor, I will concede that I think that the Ninth Circuit has a difficult time with these cases, these retaliation cases. And the state claim is clear, I think, very clear that that should be a reversal. So we think that the state claim is almost definitively established. The False Claim Act is less than that. So on the state claim, the district court denied it based on this notion that the provisions of the policy are redundant of federal, of law, and therefore not independently enforceable. That's answered by the statute 4241, which says, look, as local government, you have to adopt policies of your own that fit the objective of this statute, and then you can be exempt or you're subject to these statutes. Yeah. Suppose we agreed with you about that for some other reason, not the reason he gave wasn't correct. But there might be other reasons why this claim can't survive. I mean, you'd have to show reliance. I don't know that you have alleged reliance. There are some issues about whether at least the retaliation part of it really is mandatory or simply admonishment. And so do we decide those questions at this point, or do we just decide the district court was wrong for the reason he gave instead of that? I think that you should say that you should send it back with instructions if the False Claims Act claim is upheld, his decision on that, which I would hope that it wouldn't be. But if it was, I think it should be sent back with him to instructions, with instructions to decide to exercise his discretion as to whether or not it should remain before that court or whether it should be dismissed and allowed to be refiled in state court. That would be my reaction. I'm not sure I completely answered your question, though, Your Honor. If I didn't, please tell me and I'll try to clarify. That's another possibility, but it's not exactly what I was asking. Can you clarify? All I was asking, and it doesn't really matter, it's just a question of if we thought there were other grounds for dismissing it but not the ones that he relied on, whether we would decide those questions or remand them. But you're raising another question, which is a valid one, which is ought we to put back to him the question of whether he wants to continue to assert jurisdiction. And the reason I brought that up is because I just think that the state law is a matter of particular expertise to the state courts, and the federal courts, when we bring these issues together with a federal claim, have a tough time with them. As I indicated, I feel that the False Claims Act bar is higher to us than the state claim. However, I do believe, and I must reemphasize that we met that bar. And again, I have to come back to Mendianola, a Ninth Circuit claim. You don't have to say, I'm filing a False Claims Act claim. You don't even have to know that there was such a thing. But you have to tip him off in some way. We believe that we did. Mr. Johnson had told his four different supervisors that he was considering filing a lawsuit. Mr. Mukobu testified that there was harassment and disparate treatment during that time period. Mr. Johnson discussed it. We feel that the overwhelming evidence of retaliatory acts and harassment do establish an intent to violate the False Claims Act claim. This was a major deal for the Port of Seattle, a very big deal. An intent to what? An intent to violate, an intent to retaliate, the standard element. Retaliate for the filing of a False Claims Act claim. Right. But see, they're all mixed because we have basically three threads here. We've got the Mukobu issue, which is out there, the testimony. And he testified, look, there was a reaction. And Mr. Johnson believes it all started from there. But then we have all this, the primary emphasis was, look, these systems at the port, these multimillion-dollar systems aren't working, and I'm getting blamed for them. And so he investigated, as he was commanded to, and he did solve some of the problems. He discovered the cause of the leaking valves that was malfunctioning in the IWTP. So what is the tribal issue here? The tribal issue is several things. First of all, was there a violation of the port policies, number one. Number two, when did the port have notice of the False Claims Act protected status? Because that's what the court said. He said the port never did get notice of protected status until late in 2009 or 2010. And then he said, at least he inferred that, okay, no further damage occurred. And I would answer that by saying, look, you can't put your head in the sand. When you learn of retaliation, you must deal with it immediately. Is knowing that the employee was complaining about what was going on, is that sufficient to constitute notice of the False Claims Act? Under this record, it is, especially with the use of the word fraud. That is certainly the primary reason the False Claims Act was adapted to protect the government from fraud. The use of the word fraud was what, by your client? Yes, in his conversations with Ms. Alvarez on April 25th and April 30th of 2008. And now, again, Ms. Alvarez is the one that investigated the Bonomi thing, which shows that, again, that those aren't illusory policies at all. Because if the policies were illusory, there wouldn't have been a reversal of the decision to not put Mukabu in that position that he complained about. So that does demonstrate the validity of those. The policy, the policy, the retaliation policy doesn't read in terms mandatory, because it uses the word should, which Washington says doesn't necessarily mean mandatory. So does he have a cause of action for that policy? Yes. Why? Well, the case of Wilson v. City of Monroe absolutely establishes that it's almost on point, exactly, that you can, that you are protected, in this case, by the policies adopted by the City of Monroe. And that is pretty much dispositive on those issues. And can I go back to your original question? Because I'd like to rephrase my answer so I can really try to nail it a little bit better. And that question was, okay, after notice occurred, were there any retaliatory acts under the False Claims Act? I think that was your question. And my answer would be yes. They have failed to address the continuing retaliation, which is his placement in an alternate position at the Boiler Room versus. It happened long before. Well, it did. But he's alleged continuing retaliation. And, again, now there's a case called, I should bring this up real quick, McKinnon v. Banner Publishing, 115 Supreme Court 879. It refused any claim that Portiello can continue to retaliate against Mr. Johnson. The court held in that case that a respondent is liable for discriminatory actions, even where it subsequently discovers evidence that would have led the adverse action to be lawful. Let's go back to the local policy. You didn't bring a lawsuit under RCW 42.41. I can't because. And you never mentioned it in your opening brief, but you did mention it in your reply brief. Right. So what does Wilson have to do with it? Wilson was under 42.41. My understanding is Wilson was the person with the handbook. That was my understanding. And, again, the Port of Seattle is exempt from 42.41 because they adapted their own policies. If they can, pursue the 42.41-050. Your Honor, may I reserve this last question now? Yes, yes, yes. Thank you. Good morning, Your Honor. May it please the Court, Shane Kramer on behalf of Helle Port of Seattle with me here today is my partner, Tim Lay. Mr. Johnson brought two claims of action in this case. He brought a False Claims Act retaliation claim, and he brought a state law claim for breach of an employee handbook. He didn't bring any claim related to retaliation for testifying in a racial harassment case. So the Mojkobu allegations, they've never been pleaded. This is the first time they've been brought up. It sounds like Mr. Johnson's counsel is abandoning the FCA action. The case that he relies on, Mendiolo, is a motion to dismiss case. It sounds like it, but in the end that wasn't his position. I recognize that. The Mendiolo case that he relies on for the proposition that all you have to do is say fraud, that's a motion to dismiss case. And we're past that here. This case was decided on summary judgment. And the law is clear that it's not enough just to say fraud. You have to look at what type of fraud you were actually investigating. And I think the Patton case out of the Fourth Circuit, the Sicilia case from the Western District of Washington, and others are clear on that. The FCA is very narrow. It's not a general fraud statute. It doesn't protect you from reporting things of the type that Mr. Johnson claims that he was reporting here, things like leaky valves or NPDES permit violations. The type of claims you have to be investigating have to have some connection, some nexus with the submission of false claims to the federal government. And there's just no evidence in the record here that Mr. Johnson was investigating anything of the type. He admits that everything he was investigating had zero involvement with federal funds. It was things like construction disputes or regulatory violations of the type that this court in Hopper found just can't, as a matter of law, constitute protected activity. With respect to the state law claim for breach of the employee manual, we think that the law in Washington State is clear that, in general, in most instances, employee handbooks don't give rise to claims for breach, except in very narrow circumstances that don't apply here. This, the policies on which Mr. Johnson sued are of the exact same type that the Washington. Well, is there a state statute that makes these, that requires similar policies, that makes it mandatory that there not be retaliations, or a state whistleblower statute, 4241? Yes. Okay. And does it, as being represented, I'm asking this because I really haven't looked into this, have essentially have an opt-out? The question there, first, this is something that was raised for the first time in the reply brief on appeal. It was never briefed below. Mr. Johnson's opposition below didn't convey. Well, but he did raise the actual policy, and the question, this is really, as I understand it, an explanation of the policy, why it should be read one way rather than another way, which is that it's in fulfillment of a state obligation, if it is. Right. Is it? That's what I'm asking you. It would be a different question. There would be a different case involving whether or not this is an opt-out, because what the statute says is if the policy that the court adopts is sufficient to meet the aim of the statute, then you can opt-out. And here, I mean, if you set them side by side, then, yes, they are identical. The anti-retaliation provision in the statute is the same. So one of the things that means is that you can't be right, that because they had a policy that parallels state law or what the district court said can't be right, because the statute's set up that way, i.e., if you have a parallel provision, it's the contractor that controls, not the state. But what the statute contains procedures. The statute contains a set of steps that you need to comply with under the state law to remedy a claim of retaliation. The port policy doesn't do that. The port policy is just a broad statement that says retaliation won't be countenanced. And so it is different. Well, it does say that there will be meetings and so on. It just uses the word should. That was the only basis for saying it didn't count. It's a basis for saying it doesn't count. This wasn't the basis the district court relied on. I believe that the whistleblower policy that the ports enacted, the process set out in that relates to the investigation of the improper governmental loss that the employee comes forward with. And here, Mr. Johnson's never stated a claim that he was discriminated against for investigating improper governmental action. His complaint was limited to violation of the port's policies against retaliation and harassment for investigating fraud. And he never, his complaint also doesn't allege that the port violated anything with respect to investigations, just that they retaliated against him. And so what I was getting at with respect to whether the port's policy satisfies the standard under RCW 42.41 so that he wouldn't have a claim under that statute is that's a different question. You would have to be, the litigation would have to be does the policy that the port set out meet the requirements under that, the RCW. And that's just not a question that's been asked in this case. You'd also have to look at whether or not the policy was in place. But the district court's ruling was that essentially that it's not, that it's redundant. So he's, the question of whether it's non-redundant is inherent in that. Even if the redundancy matters, but that's essentially what the district court said. It can't be actionable because it's redundant. If, even if that were the case, and if Mr. Johnson had raised this issue below, the court could still find that Mr. Johnson didn't reasonably rely on the policy. Because if you look at the policy, which is set forth at, in Mr. Johnson's excerpts of records, the policy at issue didn't become effective until December 8, 2008, which is well after any of the alleged retaliation that he claims occurred with respect to the reassignment. The only alleged retaliation that he contained in his briefs on appeal after that date would be his allegation that the port assigned him work orders with the intent to injure him. And all of the evidence in the record on that is that Mr. Johnson was assigned the exact same work orders that other operating engineers of his same class were assigned on the days before and after. He was never assigned unique work orders whether to injure him or not. The, another point that I'd like to make is that even if the court were to find that the district court, that there was an issue of fact with respect to either claim, both are barred by the statute of limitations. The statute of limitations on the FCA retaliation claim is three years, accruing from the time the retaliation occurred. The only even arguably adverse employment action that took place here was the reassignment, which was final in December 2007. To the boiler room, that is? To the boiler room, right. And the boiler room is simply where most of the operating engineers work out of. It's called that because it's next to the central boiler at the airport. And that was final in December 2007. The statute of limitations on the state law breach of employee manual claim is also three years, not six years as Mr. Johnson argues. And the case on that is de Phillips v. Zoldt out of the Washington State Supreme Court, the site being 136 Washington 2nd 26th. And this is the question I asked, Mr. Cloud. I mean, all of this, the question of exactly what the state law may provide and also whether there was reliance and also whether there was a limitations problem, all with regard to the contract claim, the district court didn't decide any of it. It wasn't litigated, really. The district court also dismissed the claim under Local Rule 7b-2, which provides that if no opposition is filed on a motion, then it's deemed to be that the motion has been made. That seems to send some tension with the Federal Rules of Civil Procedure with regard to some of your judgments that you still have to make an affirmative case out. And the court did make an affirmative case, and the court's ruling reflects that. The court dismissed the claim under 7b-2 because Mr. Johnson didn't oppose this in his belief. That's not making an affirmative case. I mean, I thought I had to at least say that you had made a showing that you were entitled to summary judgment. And we did. In our briefing and by submitting the policies that Mr. Johnson relied on and demonstrating that under the Francombe case and the Quedado case, and every case, frankly, to have considered this, that these anti-retaliation and anti-harassment policies don't set forth specific promises. What about the Korslund case in the Supreme Court? Isn't that to the contrary? I don't believe so because that case, I believe in that case there the policies at issue provide for an actual procedure, like a progressive discipline procedure that before you're terminated you meet with a manager and then you have an appeal as of right to a regional manager, that type of thing. And this case is different. It's the policies that he alleges were violated, the anti-harassment and anti-retaliation policies, all they do is summarize rights he's already entitled to under various laws. And they don't provide, from a contractual matter, they're illusory. They don't promise him anything he wouldn't be entitled to if the policy didn't exist. Anything else? One minor housekeeping matter. With respect to the supplemental excerpts of record that Mr. Joneson provided in connection with his reply, the brief that he provided is the brief that the court below struck at the request. I don't understand what you just said. There's an anti-harassment policy that has long, has a whole big set of enforcement procedures. I'm sorry, Your Honor, with respect to? Harassment. One of the court's policies? One of the court's policies, yes. If an employee believes he's been subject to illegal harassment, he is encouraged not to rely to tell the person promptly. Then you bring it to the attention of the Port of Seattle immediately. You can report a complaint by phone, et cetera. It's just who you report it to. Supervisors and management, after receiving the complaint, they must immediately notify the employees about it, so on. It goes on and on. And with respect to that issue, the investigation, the court has the discretion on how to investigate, what would constitute an investigation, what an investigation would entail. And under Washington law, where that discretion is given, there's no promise of specifics. After notification of an employee complaint, one of the above identified employees will immediately conduct an investigation. Employees must cooperate. After completion of the investigation, a determination will be made as to the merits of the complaint. If warranted, disciplinary action up to and including determination may be imposed. Other appropriate actions will be taken to correct problems. I mean, it's not useful for you to get up and say something that's not true. What I'm saying is when you have discretion of what the investigation will entail, that … Is this just an illusion that they didn't promise them anything? It is the court's general policy in how they will comply with the federal and state laws against harassment. And that's why I asked you about the Washington Supreme Court case. And you told me that was different because it had a specific policy. Now I'm telling you that this does have a specific policy. So what's the difference between this and the Washington Supreme Court case? With respect … The specifics … The amount of discretion given to the person conducting the investigation. And I want to take a step back and actually talk about what the undisputed evidence is of what Mr. Johnston reported to Cynthia Alvarez. What he reported was that the court had not complied with its NPDES permit because there were leaks in valves. He reported to her that that was all he reported to her. And then the court did conduct an investigation on that. He said that he believed that Mr. Sweet, his supervisor, was retaliating against him because he was raising complaints of malfunctions at the plant. That's not illegal harassment. That's not … All right, but now I'm going back to where I started from. None of this is what the district court said. What the district court said was there's nothing in this policy that's enforceable.  And if he's wrong about that because, of course, London because of what the policy actually says and because of the state statute, then don't we just send it back? Do we now go into all these other reasons or do we just send it back to him? I think that the court can affirm on any reason raised below. And the reasons raised below were that he also didn't establish that he had reasonably relied on any of these policies. And so aside from the fact that they're just statements of general policy, he also hasn't established any of the other factors needed to establish a claim under the policies. Thank you. Thank you. Got a minute and a half. I wanted to briefly address the retaliation prong of the False Claims Act. I believe the Ninth Circuit and many of the circuits have inappropriately narrowed the effect and breadth of that statute. And I would ask the court to look at the broad language in the statute. Retaliation is a lot easier to pursue than an individual False Claims Act claim under the law. Any problems with the record that is complained of by the Port of Seattle is directly attributable to their failure to support their motion with any evidentiary materials whatsoever to support their position that these contracts were illusory. There's nobody from the Port of Seattle that has testified that they are, and I would challenge them to do so. There's a due process element to the POS policies. The investigation is a form of due process, obviously. The guarantee against retaliation is certainly a form of due process adopted by the court. These are public matters of great public importance. If an employee doesn't come forward with improper government action or with fraud cases, they will never be discovered. And we know, the headlines are full of this, about the Jonathan Martin and Richie Incognito case. We know that there's always retaliation when somebody complains. Okay. Thank you. Thank you. Appreciate your arguments, Counsel. The matter is submitted.
judges: Schroeder, Paez, Berzon